The United States v. LaBuff. The defendant is the appellant, right? Yes, Your Honor. Good morning, Your Honors. My name is Ed Sheehy, Jr. I'm appearing here on behalf of Levi Samuel LaBuff, who is appealing from his conviction of being a felon in possession of a firearm and his conviction on another date of possession of dangerous drugs with intent to distribute. In light of the argument time, I would like to confine my remarks with regard to the search issue on the September 9, 2002 search, and I would submit the other search, the July 1st search, on the basis of the briefs as well as the other issues. Now, with regard to that September 9, 2002 search, the government has acknowledged that Mr. LaBuff was present at the time the warrant was going to be executed, but he was not provided a copy of that warrant or the attachment to it at the time of the search. The government says that this happened because of the confusion surrounding the situation at that time, but the district court judge, in denying the motion to suppress, never said there was any confusion surrounding that search. In fact, this is exactly similar to the Gaunt case because the agents, Agent Michael, who was in charge of the search, directed the tactical team to remove Mr. LaBuff prior to the commencement of the search. I'm not real sure. Apparently there was more than one agency involved. Is that right? Yes, there was. More than one team, so apparently they weren't in communication with each other. Is that what happened? I don't believe that's true, Your Honor. I believe they were all in communication. According to Agent Michael, there was a briefing before they all went to the house, and at the time they entered the house, what he had said is that prior to that, he had directed the officers to remove Mr. LaBuff from the premises. What happened is that the officers who first enter see Mr. LaBuff smoking or attempting to smoke some marijuana along with a female who was present inside the residence.  Did they knock before they entered? I assume they did. It's not clear at all. It's not clear in the record. No, it's not. Did they knock? We don't know if they knocked and announced that they were there to serve. No, we don't. No, we don't. They do enter and they see Mr. LaBuff and the young woman apparently smoking marijuana. I believe what Agent Michael testified was that they had it in a bowl and were going to start to smoke it, but there was marijuana on the table. So they did remove Mr. LaBuff, partly because they put him under arrest for that, but also because of the- Did they arrest the female at the same time? I believe they did. I believe they did, but I don't believe anything ever happened with the female. That was sort of the, we'll say, the unexpected circumstance that caused them to change their prearranged plans, right? In other words, because of that, somebody came to the decision, well, we want to separate these two. Well, I think that was- At least that was the testimony. Yeah, I think that was Agent Michael who said we needed to separate the two of them, but I still don't believe that there was anything that stopped him from giving Mr. LaBuff a copy of the warrant and the attachment, even as they're taking him out of the house. I mean, the district- Except he said he didn't know they were going to remove him, right? From the premises, I mean. No, he said that he had directed his tactical team to remove Mr. LaBuff from the residence. Well, I know, but that, you know, that meant put him in the car or something like that, not drive him 30 miles away. Well, that may be, but he was not very clear as to whether or not Mr. LaBuff was still there when they started to commence the search. Let me ask a question this way. You know, whatever the reason, whatever the cause, Mr. LaBuff, you know, when the agent says, well, then I looked for him, I was going to give him a copy of the warrant, you know, they had taken him away to some other jail. Now, what kind of conduct does it require in order for a search to be held invalid for failure to serve the warrant? I mean, does it have to be, you know, intentional, deliberate, reckless? It's got to be- Bad faith. What kind of conduct does it take? It's got to be intentional or deliberate. And in this case, it's our position that it was deliberate because he takes the time, as Mr. LaBuff is being led out of the residence, to tell him that orally that we're here searching for guns and drugs. So he clearly talked to the man. He clearly could have and should have given him a copy of the warrant and the attachment. Did he have a copy of the warrant in his possession at that time? I believe he did because he didn't say that when he was attempting to serve Mr. LaBuff later that he had to go back out to his car to get it. And there's nothing to indicate that that was the case. I mean, the- They sort of crossed paths. They crossed paths. And the district court said that to require the officer to deliver a copy when they're in the process of securing the residence was an unreasonable requirement. Now, do we have any cases that address that notion? No, we don't. And I pointed that out in my brief. There's no law that addresses that notion at all. But as I pointed out recently, I mean, even the Groh case says that one of the requirements of particularity in the warrant is to give notice and assurance to the person whose house is being searched. And that's exactly what this Court talked about in Gant, that that was the requirement as to why you give someone a copy of the warrant and attachment if they're present before you commence the search. And I don't know of any case law that says that it's not required when you're taking the person out as you're going in to secure the residence. Did they have any reason to believe, the agents who served, the tactical team, did they have any reason to believe that they were going to encounter any kind of danger or that LaBeouf might have weapons in the house? They believed that LaBeouf had weapons in the house. And I believe that was Agent Michael's testimony as to why he directed the tactical team to remove him, was because of that belief. And he specifically told them, quote, we're doing another search warrant, drugs and guns this time. Right. So we would ask the Court to reverse the district court. Had LaBeouf ever been prosecuted or arrested or convicted for any kind of violent felonies? He was convicted in the 1980s of an assault on a Federal officer involving another situation where he possessed, I believe, a handgun. And was that known to these officers at the time? Yes, it was. And did they testify to that particular matter as a basis for their concern? No. To secure the premises? No. Agent Michael testified that the reason he wanted him removed was because they knew he had had guns in the past. And, in fact, in the earlier search in July of 2001, they found guns in the house, and Mr. LaBeouf was a convict. When they first entered the house, where was LaBeouf and the woman or girl? They were sitting at a kitchen table, which wasn't very far inside the front door. Was their view obscured in any way from the officers? I don't believe so. What's your understanding, then, as to why they wanted to secure the premises before handing him the warrant? What Agent Michael testified to was that they wanted to secure the premises to make sure there weren't other individuals inside the residence that would pose a danger to the officers when they're doing the search. Okay. Thank you. You've got a few seconds left, but we'll give you a minute for rebuttal, all right? Thank you. Good morning, Your Honor. My name is David Dennis. I'm an assistant United States attorney for the District of Montana. The appellant here has narrowed the issues rather significantly just down to the search issue. I don't think he's given up on the others. I mean, he's only got so much time. I would say it narrowed the issues for argument. It certainly hasn't narrowed the issues for questions from the public. Here we're looking at a factual determination made by the judge with respect to the September 22nd search. The judge made a factual determination after listening to the testimony of Agent Michaels that the failure to give, and there's no question in this case that there was a failure to supply the appellant with a copy of the search warrant and the attachment, but the judge made a factual determination based on the testimony of Agent Michaels that that failure was not deliberate. And one of the things that's required in order to suppress the contents or the results of a search on the basis of a violation of Rule 41 is either a deliberate refusal. You know, having entered the premises, but here's the search warrant. We're going to search this place. Your Honor, my understanding is when they first entered, they found them there smoking marijuana, and their first concern was securing the residence. As counsel has indicated, there had been a prior search in July. Again, I don't know. It's not clear from the record whether or not Agent Michaels had the search warrant with him when he went into the house or not, whether he was the first one in. And who had the search warrant? I believe it was Agent Michaels, but we don't know whether it was him. Is there anything in the record that suggests that anybody else had the search warrant? No, there is not. There is not. It was a Federal search warrant issued by the Federal District Court, correct? That is correct, Your Honor. But he's entitled to make a protective sweep and so forth before attempting service of the warrant, right? I mean, to ensure his own safety. That is correct. And that is what the judge engaged in. I'm sorry, Your Honor? That's the kind of activity he was engaged in, you know, when they first went in. Yes, it is, Your Honor. And, in fact, the District Court judge specifically addressed that in his findings and concluded that he found that to be a reasonable procedure, that that was their procedure, that was a reasonable procedure. Did the District Court, in any case, it says that it has recognized a protective sweep before handling the search warrant? Your Honor, I have not found a case that contains those specific facts and raises that particular issue. I will say that the Gantt case is completely distinguishable on the facts from the present case. What do you find most distinguishable? The fact that the United States, the government, admitted that they deliberately didn't supply the search warrant to the appellant in that case. In fact, they said that they claimed they did so because they were attempting to avoid any sort of physical, I guess, confrontation or additional problems with the persons whose residence was being searched in that circumstance. And they kept them there on the premises, I guess, I think it was in a hallway, at the time they were searching the house, without providing the search warrant to them. In this case, the appellant was completely removed from the premises and, in fact, had been taken off to Glacier County Jail. And Agent Michaels, upon discovering … Well, Agent Michaels had an opportunity to encounter Mr. LaBeouf. He did have an opportunity. They didn't change words. They did. And when they exchanged words, he did … He wasn't able to just hand him the search warrant? Apparently not, Your Honor. And it isn't clear from the record why not. But we do know that on the way in, they exchanged words. He advised them, yes, we're here to search for drugs and guns again. When he went back out to serve the search warrant, that the appellant had already been taken away. Was the conversation between Agent Michaels, not the conversation, but the statement by Agent Michaels, we're here to search for guns and drugs, before or after LaBeouf was handcuffed? Your Honor, I don't know the answer to that question. I don't know. We do know, though, that Agent Michaels' procedure normally, and we can see this from the July 9th search, his normal procedure is to provide a copy of the warrant to the individual, the person that's being searched or whose premises are being searched, because in the previous search, he did provide a copy of the warrant to Mr. LaBeouf when they searched the residence. So … I gather when they arrived at the premises, they knocked and announced what they were there for? Again, the record is not clear. I gather Mr. LaBeouf didn't answer the door, so they sort of walked in? Do we know? Again, Your Honor, I don't believe the record is clear as to what exactly happened. The record is clear that when they entered the house, that … LaBeouf was at the table with his friend. Yes. And apparently, I think the quote is, smoking a bowl of marijuana. Was there smoke in the air? That's not clear from the record either, Your Honor. And I wish I could provide an answer to some of these questions, but they're not in the record, and I was not the trial attorney that tried the case. But here, the defendant has a fairly high hurdle to overcome. He has …  The defendant has a high hurdle to overcome, because he has to show that it was clear error for the court to rely on the testimony of Agent Michaels and find that testimony credible. Agent … The court clearly believed the testimony of the agent, made a factual finding that the failure to provide the search warrant was not deliberate, made a factual finding that the process that they followed to ensure the officer's safety was a reasonable procedure. And, in fact, it went further than that and made a finding that he believes that exigent circumstances existed to conduct … to go ahead and conduct that protective sweep prior to serving the search warrant. I don't mean to make you into the defense counsel, but what prejudice was it that the search warrant was not served until afterwards? No prejudice, Your Honor. And is there any claim … No. There is not a … Would Mr. LaBoeuf's actions have been any different had the search warrant been served at the same time the handcuffs were put on? Is there any claim of that? There is no claim of that. In fact, I think in … I believe in the reply brief or in one of the appellant's briefs, the appellant actually states that there is no claim of prejudice here, that the only issue … As far as you know, is there any claim that had LaBoeuf been told what they were searching for and where they were going to search, he could have taken some steps to not inculpate himself? No. There is no such claim, Your Honor. I'll ask the same question in rebuttal in just a second. Okay. So here we have a record that is fairly clear of the judge, this court judge, making factual determinations, and really no basis to find clear error in those factual determinations. And for that reason, the United States asked this court to uphold the judge's decision not to suppress the September 22nd search or the July 9th search. And unless there are any additional questions from the panel, the United States would submit the argument. Okay. Thank you, Mr. Dennis. Rebuttal. Counsel, the rule seems to be that where the violation occurs, as to Rule 41, the violation is grounds for suppression of the evidence only where the violation was, A, deliberate and there's a trial court finding it wasn't deliberate, and, B, prejudiced the defendant. Would you address the second prong of that? How did it prejudice the defendant? Your Honor, I believe that it's an either-or requirement, that it be either, A, deliberate or, B, prejudice. So is your position that this was deliberate and we don't have to worry about prejudice? That's absolutely correct. And, Your Honor, in answer to your earlier question on page 12 of the transcript, that's page 9 in our excerpts, Agent Michael testified that the tactical officer had Leboff handcuffed and was walking him out the front door as I was coming in the front door. And then he proceeds to tell him, How are you doing? We're here to search for guns and drugs. But it's still our position that certainly at that point he could have given him a copy of the search warrant and the attachment because Mr. Leboff certainly wasn't posing any danger to the officers because he's being handcuffed and removed. So we would ask the Court to reverse the district court with regard to this search on September 2nd, and we would ask the Court to consider our other issues on the basis of the brief. Let me just ask you a follow-up on that. What would be the effect of that? He's openly trying. So if there were a reversal on that one issue? The whole conviction is overturned? Well. He'd go back and start over? I believe that. Is that the effect? That would be the effect because he was tried on both of these counts at the same time. And I think he would be left to then being tried on the July 1st count of being a felon in possession of a firearm unless the Court agreed with us on that search issue. Okay. All right. Thank you. We thank both counsel. This case is submitted for decision. Our next case on the argument calendar is Zoscher v. Union Financial Corporation and others. Thank you.
judges: Tashima, Paez, Bea